# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| ALUNE BADU, individually, and on behalf of all others similarly situated, | CIVIL ACTION NO. |
| | **CLASS ACTION** |
| Plaintiff, | |
| vs. | **[JURY TRIAL DEMANDED]** |
| NEXTGEN HEALTHCARE, INC. and NEXTGEN HEALTHCARE INFORMATION SYSTEMS, LLC., d/b/a NEXTGEN HEALTHCARE. | |
| Defendants. | |

Representative Plaintiff alleges as follows:

## INTRODUCTION

1.      Representative Plaintiff Alune Badu ("Representative Plaintiff") brings this class action against Defendants NextGen Healthcare, Inc. and NextGen Healthcare Information Systems, LLC., d/b/a NextGen Healthcare  (collectively hereinafter referred to as "Defendants") for their failure to properly secure and safeguard Representative Plaintiff's and Class Members' personally identifiable

1

information stored within Defendants' information networks, including without limitation names, dates of birth, address, and Social Security numbers (these types of information, *inter alia*, being thereafter referred to, collectively, as "personally identifiable information" or "PII").[1]

    2.    With this action, Representative Plaintiff seeks to hold Defendants responsible for the harms they caused and will continue to cause Representative Plaintiff and, at least, 1,049,375 [2] other similarly situated persons in the massive and preventable cyberattack purportedly discovered by Defendants on March 30, 2023, by which cybercriminals infiltrated Defendants' inadequately protected network servers and accessed highly sensitive PII which was being kept unprotected (the "Data Breach").

    3.    Representative Plaintiff further seeks to hold Defendants responsible for not ensuring that the PII was maintained in a manner consistent with industry and other relevant standards.

---

[1] Personally identifiable information ("PII") generally incorporates information that can be used to distinguish or trace an individual's identity, either alone or when combined with other personal or identifying information. 2 C.F.R. § 200.79. At a minimum, it includes all information that on its face expressly identifies an individual. PII also is generally defined to include certain identifiers that do not on its face name an individual, but that are considered to be particularly sensitive and/or valuable if in the wrong hands (for example, Social Security numbers, passport numbers, driver's license numbers, financial account numbers, etc.).

[2] *Data Breach Notifications* https://apps.web.maine.gov/online/aeviewer/ME/40/cb1d4654-0ce0-4e59-9eec-24391249e2a8.shtml (last accessed May 11, 2023).

4.     While Defendants claim to have discovered the breach as early as March 30, 2023, Defendants did not begin informing victims of the Data Breach until April 28, 2023 and failed to inform victims when or for how long the Data Breach occurred. Indeed, Representative Plaintiff and Class Members were wholly unaware of the Data Breach until they received letters from Defendants informing them of it. The Notice received by Representative Plaintiff was dated April 28, 2023.

5.     Defendants acquired, collected and stored Representative Plaintiff's and Class Members' PII. Therefore, at all relevant times, Defendants knew or should have known that Representative Plaintiff and Class Members would use Defendants' services to store and/or share sensitive data, including highly confidential PII.

6.     By obtaining, collecting, using and deriving a benefit from Representative Plaintiff's and Class Members' PII, Defendants assumed legal and equitable duties to those individuals. These duties arise from state and federal statutes and regulations as well as common law principles.

7.     Defendants disregarded the rights of Representative Plaintiff and Class Members by intentionally, willfully, recklessly and/or negligently failing to take and implement adequate and reasonable measures to ensure that Representative Plaintiff's and Class Members' PII was safeguarded, failing to take available steps to prevent an unauthorized disclosure of data and failing to follow applicable,

required and appropriate protocols, policies and procedures regarding the encryption of data, even for internal use. As a result, Representative Plaintiff's and Class Members' PII was compromised through disclosure to an unknown and unauthorized third party—an undoubtedly nefarious third party seeking to profit off this disclosure by defrauding Representative Plaintiff and Class Members in the future. Representative Plaintiff and Class Members have a continuing interest in ensuring their information is and remains safe and are entitled to injunctive and other equitable relief.

## **JURISDICTION AND VENUE**

8.     Jurisdiction is proper in this Court under 28 U.S.C. § 1332 (diversity jurisdiction). Specifically, this Court has subject matter and diversity jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action where the amount in controversy exceeds the sum or value of $5 million, exclusive of interest and costs, there are more than 100 members in the proposed Class and at least one other Class Member is a citizen of a state different from Defendants.

9.     Supplemental jurisdiction to adjudicate issues pertaining to state law is proper in this Court under 28 U.S.C. § 1367.

10.    Defendants are both headquartered and routinely conduct business in the State where this District is located, have sufficient minimum contacts in this State and have intentionally availed themselves of this jurisdiction by marketing and selling products and services and by accepting and processing payments for those products and services within this State.

11.    Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events that gave rise to Representative Plaintiff's claims took place within this District, and Defendants do business in this Judicial District.

## PLAINTIFF

12.    Representative Plaintiff is an adult individual and, at all relevant times herein, was a resident and citizen of the State of Kentucky. Representative Plaintiff is a victim of the Data Breach.

13.    Defendants received highly sensitive PII from Representative Plaintiff in connection the services Representative Plaintiff received. As a result, Representative Plaintiff's information was among the data accessed by an unauthorized third party in the Data Breach.

14.    At all times herein relevant, Representative Plaintiff is and was a member of the Class.

15.    As required in order to obtain services from Defendants, Representative Plaintiff provided Defendants with highly sensitive PII.

16.    Representative Plaintiff's PII was exposed in the Data Breach because Defendant stored and shared Representative Plaintiff's PII. Representative Plaintiff's PII was within the possession and control of Defendants at the time of the Data Breach.

17.    Representative Plaintiff received a letter from Defendants, dated April 28, 2023, stating Representative Plaintiff's PII was involved in the Data Breach (the "Notice").

18.    As a result, Representative Plaintiff spent time dealing with the consequences of the Data Breach, which included and continues to include time spent verifying the legitimacy and impact of the Data Breach, exploring credit monitoring and identity theft insurance options, self-monitoring Representative Plaintiff's accounts and seeking legal counsel regarding Representative Plaintiff's options for remedying and/or mitigating the effects of the Data Breach. This time has been lost forever and cannot be recaptured.

19.    Representative Plaintiff suffered actual injury in the form of damages to and diminution in the value of Representative Plaintiff's PII—a form of intangible

property that Representative Plaintiff's entrusted to Defendants, which was compromised in and as a result of the Data Breach.

20.    Representative Plaintiff suffered lost time, annoyance, interference and inconvenience as a result of the Data Breach and has anxiety and increased concerns for the loss of privacy, as well as anxiety over the impact of cybercriminals accessing, using and selling Representative Plaintiff's PII.

21.    Representative Plaintiff suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft and misuse resulting from Representative Plaintiff's PII, in combination with Representative Plaintiff's name, being placed in the hands of unauthorized third parties/criminals.

22.    Representative Plaintiff has a continuing interest in ensuring that Representative Plaintiff's PII, which, upon information and belief, remains backed up in Defendants' possession, is protected and safeguarded from future breaches.

## **DEFENDANT**

23.    Defendant NextGen Healthcare Inc. is a Delaware corporation with a principal place of business located at 3565 Piedmont Road Northeast, Building 6,

Suite 700, Atlanta, Georgia, 30305. Defendant NextGen Healthcare Inc. is an electronic health records software provider.[3]

24.     Defendant NextGen Healthcare Information Systems, LLC is a California limited liability company with a principal place of business located at 3525 Piedmont Rd., NE, Building 6, Suite 700, Atlanta, Georgia, 30305.

25.     The true names and capacities of persons or entities, whether individual, corporate, associate or otherwise, who may be responsible for some of the claims alleged here are currently unknown to Representative Plaintiff. Representative Plaintiff will seek leave of court to amend this Complaint to reflect the true names and capacities of such responsible parties when their identities become known.

## CLASS ACTION ALLEGATIONS

26.     Representative Plaintiff brings this action pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, on behalf of Representative Plaintiff and the following class/subclass (collectively, the "Classes"):

---

[3]    *NextGen Healthcare* https://www.nextgen.com/ (last accessed May 11, 2023).

**Nationwide Class:**

"All individuals within the United States of America whose PII was exposed to unauthorized third parties as a result of the data breach discovered by Defendants on March 30, 2023."

**Kentucky Subclass:**

"All individuals within the State of Kentucky whose PII was exposed to unauthorized third parties as a result of the data breach discovered by Defendants on March 30, 2023."

27.     Excluded from the Classes are the following individuals and/or entities: Defendants and Defendants' parents, subsidiaries, affiliates, officers and directors and any entity in which Defendant have a controlling interest, all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out, any and all federal, state or local governments, including but not limited to its departments, agencies, divisions, bureaus, boards, sections, groups, counsel and/or subdivision, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

28.     In the alternative, Representative Plaintiff requests additional Subclasses as necessary based on the types of PII that were compromised.

29.     Representative Plaintiff reserves the right to amend the above definition or to propose subclasses in subsequent pleadings and motions for class certification.

30.     This action has been brought and may properly be maintained as a class action under Federal Rule of Civil Procedure Rule 23 because there is a well-defined community of interest in the litigation and membership in the proposed Classes is easily ascertainable.

    a.    <u>Numerosity</u>: A class action is the only available method for the fair and efficient adjudication of this controversy. The members of the Plaintiff Classes are so numerous that joinder of all members is impractical, if not impossible. Representative Plaintiff is informed and believe and, on that basis, alleges that the total number of Class Members is in the tens of thousands of individuals. Membership in the Classes will be determined by analysis of Defendants' records.

    b.    <u>Commonality</u>: Representative Plaintiff and the Class Members share a community of interest in that there are numerous common questions and issues of fact and law which predominate over any questions and issues solely affecting individual members, including but not necessarily limited to:

    1)    Whether Defendants had a legal duty to Representative Plaintiff and the Classes to exercise due care in collecting, storing, using and/or safeguarding their PII;

    2)    Whether Defendants knew or should have known of the susceptibility of its data security systems to a data breach;

    3)    Whether Defendants' security procedures and practices to protect its systems were reasonable in light of the measures recommended by data security experts;

    4)    Whether Defendants' failure to implement adequate data security measures allowed the Data Breach to occur;

5) Whether Defendants failed to comply with their own policies and applicable laws, regulations and industry standards relating to data security;

6) Whether Defendants adequately, promptly and accurately informed Representative Plaintiff and Class Members that their PII had been compromised.

7) How and when Defendants actually learned of the Data Breach;

8) Whether Defendants' conduct, including its failure to act, resulted in or was the proximate cause of the breach of their systems, resulting in the loss of Representative Plaintiff's and Class Members' PII;

9) Whether Defendants adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

10) Whether Defendants engaged in unfair, unlawful or deceptive practices by failing to safeguard Representative Plaintiff's and Class Members' PII;

11) Whether Representative Plaintiff and Class Members are entitled to actual and/or statutory damages and/or whether injunctive, corrective and/or declaratory relief and/or an accounting is/are appropriate as a result of Defendants' wrongful conduct;

12) Whether Representative Plaintiff and Class Members are entitled to restitution as a result of Defendants' wrongful conduct.

c. Typicality: Representative Plaintiff's claims are typical of the claims of the Plaintiff Classes. Representative Plaintiff and all members of the Plaintiff Classes sustained damages arising out of and caused by Defendants' common course of conduct in violation of law, as alleged herein.

    d.    <u>Adequacy of Representation</u>: Representative Plaintiff in this class action is an adequate representative of each of the Plaintiff Classes in that the Representative Plaintiff has the same interest in the litigation of this case as the Class Members, is committed to vigorous prosecution of this case and has retained competent counsel who are experienced in conducting litigation of this nature. Representative Plaintiff is not subject to any individual defenses unique from those conceivably applicable to other Class Members or the Classes in their entireties. Representative Plaintiff anticipates no management difficulties in this litigation.

    e.    <u>Superiority of Class Action</u>: Since the damages suffered by individual Class Members, while not inconsequential, may be relatively small, the expense and burden of individual litigation by each member makes or may make it impractical for members of the Plaintiff Classes to seek redress individually for the wrongful conduct alleged herein. Should separate actions be brought or be required to be brought by each individual member of the Plaintiff Classes, the resulting multiplicity of lawsuits would cause undue hardship and expense for the Court and the litigants. The prosecution of separate actions would also create a risk of inconsistent rulings which might be dispositive of the interests of the Class Members who are not parties to the adjudications and/or may substantially impede their ability to adequately protect their interests.

31.    Class certification is proper because the questions raised by this Complaint are of common or general interest affecting numerous persons, such that it is impracticable to bring all Class Members before the Court.

32.    This class action is also appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to Class

Members, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Classes in their entireties. Defendants' policies and practices challenged herein apply to and affect Class Members uniformly and Representative Plaintiff's challenge of these policies and practices hinges on Defendants' conduct with respect to the Classes in their entireties, not on facts or law applicable only to Representative Plaintiff.

33.     Unless a Class-wide injunction is issued, Defendants may continue in their failure to properly secure the PII of Class Members, and Defendants may continue to act unlawfully as set forth in this Complaint.

34.     Further, Defendants have acted or refused to act on grounds generally applicable to the Classes and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

## **COMMON FACTUAL ALLEGATIONS**

### **The Cyberattack**

35.     In the course of the Data Breach, one or more unauthorized third parties accessed Class Members' sensitive data, including but not limited to names,

dates of birth, addresses, and Social Security numbers. Representative Plaintiff was among the individuals whose data was accessed in the Data Breach.

36.     According to the Data Breach Notification, which Defendants filed with the Office of the Maine Attorney General, 1,049,375 persons were affected by the Data Breach.[4]

37.     Representative Plaintiff was provided the information detailed above upon Representative Plaintiff's receipt of a letter from Defendants, dated April 28, 2023.  Representative Plaintiff was not aware of the Data Breach until receiving that letter.

**Defendants' Failed Response to the Breach**

38.     Upon information and belief, the unauthorized third-party cybercriminals gained access to Representative Plaintiff's and Class Members' PII with the intent of misusing the PII, including marketing and selling Representative Plaintiff's and Class Members' PII.

39.     Not until roughly three months after it claims to have discovered the Data Breach did Defendants begin sending the Notice to persons whose PII

---

[4]   *Data Breach Notification*
https://apps.web.maine.gov/online/aeviewer/ME/40/cb1d4654-0ce0-4e59-9eec-24391249e2a8.shtml (last accessed May 11, 2023).

Defendants confirmed was potentially compromised as a result of the Data Breach. The Notice provided basic details of the Data Breach and Defendants' recommended next steps.

40.    The Notice included, *inter alia*, the claims that Defendants had learned of the Data Breach on March 30, 2023 and Defendants later discovered the unauthorized access began as early as March 29, 2023.

41.    Defendants had and continues to have obligations created by applicable federal and state law as set forth herein, reasonable industry standards, common law and its own assurances and representations to keep Representative Plaintiff's and Class Members' PII confidential and to protect such PII from unauthorized access.

42.    Representative Plaintiff and Class Members were required to provide their PII to Defendants in order to receive healthcare services, and as part of providing services, Defendants created, collected and stored Representative Plaintiff's and Class Members' PII with the reasonable expectation and mutual understanding that Defendants would comply with their obligations to keep such information confidential and secure from unauthorized access.

43.    Despite this, Representative Plaintiff and the Class Members remain, even today, in the dark regarding what particular data was stolen, the particular

malware used and what steps are being taken, if any, to secure their PII going forward. Representative Plaintiff and Class Members are thus left to speculate as to where their PII ended up, who has used it and for what potentially nefarious purposes. Indeed, they are left to further speculate as to the full impact of the Data Breach and how exactly Defendants intend to enhance its information security systems and monitoring capabilities so as to prevent further breaches.

44.    Representative Plaintiff's and Class Members' PII may end up for sale on the dark web, or simply fall into the hands of companies that will use the detailed PII for targeted marketing without Representative Plaintiff's and/or Class Members' approval. Either way, unauthorized individuals can now easily access Representative Plaintiff's and Class Members' PII.

**Defendants Collected/Stored Class Members' PHI/PII**

45.    Defendants acquired, collected, stored and assured reasonable security over Representative Plaintiff's and Class Members' PII.

46.    As a condition of their relationships with Representative Plaintiff and Class Members, Defendants required that Representative Plaintiff and Class Members entrust Defendants with highly sensitive and confidential PII. Defendants,

in turn, stored that information on Defendants' system that was ultimately affected by the Data Breach.

47.    By obtaining, collecting and storing Representative Plaintiff's and Class Members' PII, Defendants assumed legal and equitable duties over the PII and knew or should have known that they were thereafter responsible for protecting Representative Plaintiff's and Class Members' PII from unauthorized disclosure.

48.    Representative Plaintiff and Class Members have taken reasonable steps to maintain their PII's confidentiality. Representative Plaintiff and Class Members relied on Defendants to keep their PII confidential and securely maintained, to use this information for business purposes only and to make only authorized disclosures of this information.

49.    Defendants could have prevented the Data Breach, which began no later than March 30, 2023, by properly securing and encrypting and/or more securely encrypting their servers generally, as well as Representative Plaintiff's and Class Members' PII.

50.    Defendants' negligence in safeguarding Representative Plaintiff's and Class Members' PII is exacerbated by repeated warnings and alerts directed to protecting and securing sensitive data, as evidenced by the trending data breach attacks in recent years.

51.     Due to the high-profile nature of these breaches, and other breaches of their kind, Defendants were and/or certainly should have been on notice and aware of such attacks occurring in their industry and, therefore, should have assumed and adequately performed the duty of preparing for such an imminent attack. This is especially true given that Defendants are large, sophisticated operations with the resources to put adequate data security protocols in place.

52.     And yet, despite the prevalence of public announcements of data breach and data security compromises, Defendants failed to take appropriate steps to protect Representative Plaintiff's and Class Members' PII from being compromised.

**Defendants Had an Obligation to Protect the Stolen Information**

53.     In failing to adequately secure Representative Plaintiff's and Class Member's sensitive data, Defendants breached duties they owed Representative Plaintiff and Class Members under statutory and common law. Moreover, Representative Plaintiff and Class Members surrendered their highly sensitive PII to Defendants under the implied condition that Defendants would keep it private and secure. Accordingly, Defendants also have an implied duty to safeguard their PII, independent of any statute.

54.     Defendants were prohibited by the Federal Trade Commission Act (the "FTC Act") (15 U.S.C. § 45) from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission (the "FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act. *See, e.g., FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

55.     In addition to their obligations under federal and state laws, Defendants owed a duty to Representative Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting and protecting the PII in Defendants' possession from being compromised, lost, stolen, accessed and misused by unauthorized persons. Defendants owed a duty to Representative Plaintiff and Class Members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that their computer systems, networks and protocols adequately protected Representative Plaintiff's and Class Members' PII.

56.     Defendants owed a duty to Representative Plaintiff and Class Members to design, maintain and test their computer systems, servers and networks to ensure that all PII in their possession was adequately secured and protected.

57.     Defendants owed a duty to Representative Plaintiff and Class Members to create and implement reasonable data security practices and procedures to protect all PII in their possession, including not sharing information with other entities who maintained sub-standard data security systems.

58.     Defendants owed a duty to Representative Plaintiff and Class Members to implement processes that would immediately detect a breach on their data security systems in a timely manner.

59.     Defendants owed a duty to Representative Plaintiff and Class Members to act upon data security warnings and alerts in a timely fashion.

60.     Defendants owed a duty to Representative Plaintiff and Class Members to disclose if their computer systems and data security practices were inadequate to safeguard individuals' PII from theft because such an inadequacy would be a material fact in the decision to entrust their PII to Defendants.

61.     Defendants owed a duty of care to Representative Plaintiff and Class Members because they were foreseeable and probable victims of any inadequate data security practices.

62.     Defendants owed a duty to Representative Plaintiff and Class Members to encrypt and/or more reliably encrypt Representative Plaintiff's and

Class Members' PII and monitor user behavior and activity in order to identity possible threats.

**Value of the Relevant Sensitive Information**

63.     While the greater efficiency of electronic health records translates to cost savings for providers, it also comes with the risk of privacy breaches. These electronic health records contain a plethora of sensitive information (e.g., patient data, patient diagnosis, lab results, medical prescriptions, treatment plans, etc.) that is valuable to cybercriminals. One patient's complete record can be sold for hundreds of dollars on the dark web. As such, PHI/PII is a valuable commodity for which a "cyber black market" exists in which criminals openly post stolen payment card numbers, Social Security numbers and other personal information on a number of underground internet websites.

64.     The high value of PHI/PII to criminals is further evidenced by the prices they will pay for it through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50

to $200.[5] Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web.[6] Criminals can also purchase access to entire company data breaches from $999 to $4,995.[7]

65.    Between 2005 and 2019, at least 249 million people were affected by health care data breaches.[8] Indeed, during 2019 alone, over 41 million healthcare records were exposed, stolen or unlawfully disclosed in 505 data breaches.[9] In short, these sorts of data breaches are increasingly common, especially among healthcare systems, which account for 30.03 percent of overall health data breaches, according to cybersecurity firm Tenable.[10]

66.    These criminal activities have and will result in devastating financial and personal losses to Representative Plaintiff and Class Members. For example, it is believed that certain PHI/PII compromised in the 2017 Experian data breach was

---

[5]    *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, Oct. 16, 2019, *available at*: https://www.digitaltrends.com/computing/personal-data-sold-on-the- dark-web-how-much-it-costs/ (last accessed                    ).
[6]    *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian, Dec. 6, 2017, *available at*: https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last accessed May 11, 2023).
[7]    *In the Dark*, VPNOverview, 2019, *available at*: https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/ (last accessed May 11, 2023).
[8]    https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7349636/#B5-healthcare-08-00133 (last accessed (last accessed May 11, 2023).
[9]    https://www.hipaajournal.com/december-2019-healthcare-data-breach-report/ (last accessed May 11, 2023).
[10]    https://www.tenable.com/blog/healthcare-security-ransomware-plays-a-prominent-role-in-covid-19-era-breaches (last accessed May 11, 2023).

being used three years later by identity thieves to apply for COVID-19-related benefits in the state of Oklahoma. Such fraud will be an omnipresent threat for Representative Plaintiff and Class Members for the rest of their lives. They will need to remain constantly vigilant.

67.    The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." The FTC describes identifying information as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."

68.    Identity thieves can use PII, such as that of Representative Plaintiff and Class Members which Defendants failed to keep secure, to perpetrate a variety of crimes that harm victims. For instance, identity thieves may commit various types of government fraud such as immigration fraud, obtaining a driver's license or identification card in the victim's name but with another's picture, using the victim's information to obtain government benefits or filing a fraudulent tax return using the victim's information to obtain a fraudulent refund.

69.     The ramifications of Defendants' failure to keep secure Representative

Plaintiff's and Class Members' PII are long lasting and severe. Once PII is stolen,

particularly identification numbers, fraudulent use of that information and damage

to victims may continue for years. Indeed, Representative Plaintiff's and Class

Members' PII was taken by hackers to engage in identity theft or to sell it to other

criminals who will purchase the PII for that purpose. The fraudulent activity

resulting from the Data Breach may not come to light for years.

70.     There may be a time lag between when harm occurs versus when it is

discovered and also between when PII is stolen and when it is used. According to

the U.S. Government Accountability Office ("GAO"), which conducted a study

regarding data breaches:

> [L]aw enforcement officials told us that in some cases,
> stolen data may be held for up to a year or more before
> being used to commit identity theft. Further, once stolen
> data have been sold or posted on the Web, fraudulent use
> of that information may continue for years. As a result,
> studies that attempt to measure the harm resulting from
> data breaches cannot necessarily rule out all future harm.[11]

71.     The harm to Representative Plaintiff and Class Members is especially

acute given the nature of the leaked data. Medical identity theft is one of the most

---

[11] *Report to Congressional Requesters*, GAO, at 29 (June 2007), *available at:*
http://www.gao.gov/new.items/d07737.pdf (last accessed May 11, 2023).

common, most expensive and most difficult-to-prevent forms of identity theft. According to Kaiser Health News, "medical-related identity theft accounted for 43 percent of all identity thefts reported in the United States in 2013," which is more than identity thefts involving banking and finance, the government and the military, or education.[12]

72.    "Medical identity theft is a growing and dangerous crime that leaves its victims with little to no recourse for recovery," reported Pam Dixon, executive director of World Privacy Forum. "Victims often experience financial repercussions and worse yet, they frequently discover erroneous information has been added to their personal medical files due to the thief's activities."[13]

73.    When cybercriminals access financial information, health insurance information and other personally sensitive data—as they did here—there is no limit to the amount of fraud to which Defendant may have exposed Representative Plaintiff and Class Members.

74.    A study by Experian found that the average total cost of medical identity theft is "about $20,000" per incident, and that a majority of victims of medical identity theft were forced to pay out-of-pocket costs for healthcare they did

---

[12]   Michael Ollove, "The Rise of Medical Identity Theft in Healthcare," Kaiser Health News, Feb. 7, 2014, https://khn.org/news/rise-of-indentity-theft/ (last accessed May 11, 2023).
[13]   *Id.*

not receive in order to restore coverage.[14] Almost half of medical identity theft victims lose their healthcare coverage as a result of the incident, while nearly one-third saw their insurance premiums rise, and 40 percent were never able to resolve their identity theft at all.[15]

75.    And data breaches are preventable.[16] As Lucy Thompson wrote in the Data Breach and Encryption Handbook, "[i]n almost all cases, the data breaches that occurred could have been prevented by proper planning and the correct design and implementation of appropriate security solutions."[17] She added that "[o]rganizations that collect, use, store, and share sensitive personal data must accept responsibility for protecting the information and ensuring that it is not compromised…."[18]

76.    Most of the reported data breaches are a result of lax security and the failure to create or enforce appropriate security policies, rules and procedures. Appropriate information security controls, including encryption, must be

---

[14]   See Elinor Mills, "Study: Medical Identity Theft is Costly for Victims," CNET (Mar, 3, 2010), https://www.cnet.com/news/study-medical-identity-theft-is-costly-for-victims/ (last accessed (last accessed May 11, 2023).
[15]   Id.; see also Healthcare Data Breach: What to Know About them and What to Do After One, EXPERIAN, https://www.experian.com/blogs/ask-experian/healthcare-data-breach-what-to-know-about-them-and-what-to-do-after-one/ (last accessed May 11, 2023).
[16]   Lucy L. Thompson, "Despite the Alarming Trends, Data Breaches Are Preventable," *in* DATA BREACH AND ENCRYPTION HANDBOOK (Lucy Thompson, ed., 2012)
[17]   *Id.* at 17.
[18]   *Id.* at 28.

implemented and enforced in a rigorous and disciplined manner so that a *data breach never occurs*.[19]

77.   Here, Defendants knew of the importance of safeguarding PII and of the foreseeable consequences that would occur if Representative Plaintiff's and Class Members' PII was stolen, including the significant costs that would be placed on Representative Plaintiff and Class Members as a result of a breach of this magnitude. As detailed above, Defendants knew or should have known that the development and use of such protocols were necessary to fulfill their statutory and common law duties to Representative Plaintiff and Class Members. Their failure to do so is therefore intentional, willful, reckless and/or grossly negligent.

78.   Defendants disregarded the rights of Representative Plaintiff and Class Members by, *inter alia*, (i) intentionally, willfully, recklessly and/or negligently failing to take adequate and reasonable measures to ensure that their network servers were protected against unauthorized intrusions, (ii) failing to disclose that they did not have adequately robust security protocols and training practices in place to adequately safeguard Representative Plaintiff's and Class Members' PII, (iii) failing to take standard and reasonably available steps to prevent the Data

---

[19]   *Id.*

Breach, (iv) concealing the existence and extent of the Data Breach for an unreasonable duration of time, and (v) failing to provide Representative Plaintiff and Class Members prompt and accurate notice of the Data Breach.

## FIRST CLAIM FOR RELIEF
### Negligence
### (On behalf of the Nationwide Class and the Kentucky Subclass)

79.     Each and every allegation of the preceding paragraphs is incorporated in this Claim with the same force and effect as though fully set forth herein.

80.     At all times herein relevant, Defendants owed Representative Plaintiff and Class Members a duty of care, *inter alia*, to act with reasonable care to secure and safeguard their PII and to use commercially reasonable methods to do so. Defendants took on this obligation upon accepting and storing Representative Plaintiff's and Class Members' PII on their computer systems and networks.

81.     Among these duties, Defendants were expected:

a.      to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting and protecting the PII in their possession;

b.      to protect Representative Plaintiff's and Class Members' PII using reasonable and adequate security procedures and systems that were/are compliant with industry-standard practices;

c.      to implement processes to quickly detect the Data Breach and to timely act on warnings about data breaches; and

d.    to promptly notify Representative Plaintiff and Class Members of any data breach, security incident or intrusion that affected or may have affected their PII.

82.    Defendants knew that the PII was private and confidential and should be protected as private and confidential and, thus, Defendants owed a duty of care not to subject Representative Plaintiff and Class Members to an unreasonable risk of harm because they were foreseeable and probable victims of any inadequate security practices.

83.    Defendants knew or should have known of the risks inherent in collecting and storing PII, the vulnerabilities of their data security systems and the importance of adequate security. Defendant knew about numerous, well-publicized data breaches.

84.    Defendants knew or should have known that their data systems and networks did not adequately safeguard Representative Plaintiff's and Class Members' PII.

85.    Only Defendants were in the position to ensure that their systems and protocols were sufficient to protect the PII that Representative Plaintiff and Class Members had entrusted to it.

86.    Defendants breached their duties to Representative Plaintiff and Class Members by failing to provide fair, reasonable or adequate computer systems and

data security practices to safeguard Representative Plaintiff's and Class Members'
PII.

87.     Because Defendants knew that a breach of their systems could damage
thousands of individuals, including Representative Plaintiff and Class Members,
Defendants had a duty to adequately protect their data systems and the PII contained
thereon.

88.     Representative Plaintiff's and Class Members' willingness to entrust
Defendants with their PII was predicated on the understanding that Defendants
would take adequate security precautions. Moreover, only Defendant had the ability
to protect their systems and the PII they stored on them from attack. Thus,
Defendants had special relationships with Representative Plaintiff and Class
Members.

89.     Defendants also had independent duties under state and federal laws
that required Defendant to reasonably safeguard Representative Plaintiff's and
Class Members' PII and promptly notify them about the Data Breach. These
"independent duties" are untethered to any contract between Defendants and
Representative Plaintiff and/or the remaining Class Members.

90.     Defendants breached their general duty of care to Representative
Plaintiff and Class Members in, but not necessarily limited to, the following ways:

a. by failing to provide fair, reasonable or adequate computer systems and data security practices to safeguard Representative Plaintiff's and Class Members' PII;

b. by failing to timely and accurately disclose that Representative Plaintiff's and Class Members' PII had been improperly acquired or accessed;

c. by failing to adequately protect and safeguard the PII by knowingly disregarding standard information security principles, despite obvious risks, and by allowing unmonitored and unrestricted access to unsecured PII;

d. by failing to provide adequate supervision and oversight of the PII with which they were entrusted in spite of the known risk and foreseeable likelihood of breach and misuse, which permitted an unknown third party to gather Representative Plaintiff's and Class Members' PII, misuse the PII and intentionally disclose it to others without consent;

e. by failing to adequately train their employees to not store PII longer than absolutely necessary;

f. by failing to consistently enforce security policies aimed at protecting Representative Plaintiff's and the Class Members' PII;

g. by failing to implement processes to quickly detect data breaches, security incidents or intrusions; and

h. by failing to encrypt Representative Plaintiff's and Class Members' PII and monitor user behavior and activity in order to identify possible threats.

91.    Defendants' willful failure to abide by these duties was wrongful, reckless and/or grossly negligent in light of the foreseeable risks and known threats.

92.     As a proximate and foreseeable result of Defendants' grossly negligent conduct, Representative Plaintiff and Class Members have suffered damages and are at imminent risk of additional harms and damages (as alleged above).

93.     The law further imposes an affirmative duty on Defendants to timely disclose the unauthorized access and theft of the PII to Representative Plaintiff and Class Members so that they could and/or still can take appropriate measures to mitigate damages, protect against adverse consequences and thwart future misuse of their PII.

94.     Defendants breached their duty to notify Representative Plaintiff and Class Members of the unauthorized access by waiting almost a year after learning of the Data Breach to notify Representative Plaintiff and Class Members and then by failing and continuing to fail to provide Representative Plaintiff and Class Members sufficient information regarding the breach. To date, Defendants have not provided sufficient information to Representative Plaintiff and Class Members regarding the extent of the unauthorized access and continues to breach their disclosure obligations to Representative Plaintiff and Class Members.

95.     Further, through their failure to provide timely and clear notification of the Data Breach to Representative Plaintiff and Class Members, Defendants

prevented Representative Plaintiff and Class Members from taking meaningful, proactive steps to, *inter alia*, secure and/or access their PII.

96.    There is a close causal connection between Defendants' failure to implement security measures to protect Representative Plaintiff's and Class Members' PII and the harm suffered, or risk of imminent harm suffered by Representative Plaintiff and Class Members. Representative Plaintiff's and Class Members' PII was accessed as the proximate result of Defendants' failure to exercise reasonable care in safeguarding such PII by adopting, implementing and maintaining appropriate security measures.

97.    Defendants' wrongful actions, inactions and omissions constituted and will continue to constitute common law negligence.

98.    The damages Representative Plaintiff and Class Members have suffered as alleged above and will continue to suffer were and are the direct and proximate result of Defendants' grossly negligent conduct.

99.    Additionally, 15 U.S.C. § 45 (FTC Act, Section 5) prohibits "unfair […] practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendants, of failing to use reasonable measures to protect PII. The FTC publications and orders described above also form part of the basis of Defendants' duty in this regard.

100. Defendants violated 15 U.S.C. § 45 by failing to use reasonable measures to protect PII and not complying with applicable industry standards, as described in detail herein. Defendants' conduct was particularly unreasonable given the nature and amount of PII they obtained and stored and the foreseeable consequences of the immense damages that would result to Representative Plaintiff and Class Members.

101. As a direct and proximate result of Defendants' negligence and negligence *per se*, Representative Plaintiff and Class Members have suffered and will continue to suffer injury, including but not limited to (i) actual identity theft, (ii) the loss of the opportunity of how their PII is used, (iii) the compromise, publication and/or theft of their PII, (iv) out-of-pocket expenses associated with the prevention, detection and recovery from identity theft, tax fraud and/or unauthorized use of their PII, (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest and recover from embarrassment and identity theft, (vi) lost continuity in relation to their personal records, (vii) the continued risk to their PII, which may remain in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants

fail to undertake appropriate and adequate measures to protect Representative Plaintiff's and Class Members' PII in their continued possession, and (viii) future costs in terms of time, effort and money that will be expended to prevent, detect, contest and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Representative Plaintiff and Class Members.

102.   As a direct and proximate result of Defendants' negligence and negligence *per se*, Representative Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm, including but not limited to anxiety, emotional distress, loss of privacy and other economic and noneconomic losses.

103.   Additionally, as a direct and proximate result of Defendants' negligence and negligence *per se*, Representative Plaintiff and Class Members have suffered and will continue to suffer the continued risks of exposure of their PII, which remains in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect PII in its continued possession.

**SECOND CLAIM FOR RELIEF**
**Negligence *Per Se***
**(On behalf of the Nationwide Class and the Kentucky Subclass)**

104.   Each and every allegation of the preceding paragraphs is incorporated in this Claim with the same force and effect as though fully set forth herein.

105.   Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45 prohibits companies such as Defendants from "using any unfair method of competition or unfair or deceptive act or practice in or affecting commerce," including failing to use reasonable measures to protect PII. In addition to the FTC Act, the agency also enforces other federal laws relating to consumers' privacy and security. The FTC publications and orders described above also form part of the basis of Defendants' duty in this regard.

106.   In addition to the FTC rules and regulations and state law, other states and jurisdictions where victims of the Data Breach are located require that Defendants protect PII from unauthorized access and disclosure, and timely notify the victim of a data breach.

107.   Defendants violated FTC rules and regulations obligating companies to use reasonable measures to protect PII by failing to comply with applicable industry standards and by unduly delaying reasonable notice of the actual breach. Defendants' conduct was particularly unreasonable given the nature and amount of PII they obtained and stored and the foreseeable consequences of a Data Breach and the exposure of Representative Plaintiff's and Class members' highly sensitive PII.

108.    Each of Defendants' statutory violations of Section 5 of the FTC Act and other applicable statutes, rules and regulations, constitute negligence *per se*.

109.    Representative Plaintiff and the Class Members are within the category of persons the FTC Act was intended to protect.

110.    The harm that occurred as a result of the Data Breach described herein is the type of harm the FTC Act were intended to guard against.

111.    As a direct and proximate result of Defendants' negligence *per se*, Representative Plaintiff and Class Members have been damaged as described herein, continue to suffer injuries as detailed above, are subject to the continued risk of exposure of their PII in Defendants' possession and are entitled to damages in an amount to be proven at trial.

**THIRD CLAIM FOR RELIEF**
**Breach of Implied Contract**
**(On behalf of the Nationwide Class and the Kentucky Subclass)**

112.    Each and every allegation of the preceding paragraphs is incorporated in this Claim with the same force and effect as though fully set forth herein.

113.    Through their course of conduct, Defendants, Representative Plaintiff and Class Members entered into implied contracts for Defendants to implement data

security adequate to safeguard and protect the privacy of Representative Plaintiff's and Class Members' PII.

114.   Defendants required Representative Plaintiff and Class Members to provide and entrust their PII as a condition of obtaining Defendants' services from Defendant.

115.   Defendants solicited and invited Representative Plaintiff and Class Members to provide their PII as part of Defendants' regular business practices. Representative Plaintiff and Class Members accepted Defendants' offers and provided their PII to Defendants.

116.   As a condition of being customers of Defendants, Representative Plaintiff and Class Members provided and entrusted their PII to Defendants. In so doing, Representative Plaintiff and Class Members entered into implied contracts with Defendants by which Defendants agreed to safeguard and protect such non-public information, to keep such information secure and confidential and to timely and accurately notify Representative Plaintiff and Class Members if its data had been breached and compromised or stolen.

117.   A meeting of the minds occurred when Representative Plaintiff and Class Members agreed to, and did, provide their PII to Defendants, in exchange for, amongst other things, the protection of their PII.

118.   Representative Plaintiff and Class Members fully performed their obligations under the implied contracts with Defendants.

119.   Defendants breached the implied contracts they made with Representative Plaintiff and Class Members by failing to safeguard and protect their PII and by failing to provide timely and accurate notice to them that their PII was compromised as a result of the Data Breach.

120.   As a direct and proximate result of Defendants' above-described breach of implied contract, Representative Plaintiff and Class Members have suffered and will continue to suffer (i) ongoing, imminent and impending threat of identity theft crimes, fraud and abuse, resulting in monetary loss and economic harm, (ii) actual identity theft crimes, fraud and abuse, resulting in monetary loss and economic harm, (iii) loss of the confidentiality of the stolen confidential data, (iv) the illegal sale of the compromised data on the dark web, (v) lost work time, and (f) other economic and noneconomic harm.

## FOURTH CLAIM FOR RELIEF
### Breach of the Implied Covenant of Good Faith and Fair Dealing
### (On behalf of the Nationwide Class and the Kentucky Subclass)

121.   Each and every allegation of the preceding paragraphs is incorporated in this Claim with the same force and effect as though fully set forth therein.

122.   Every contract in this State has an implied covenant of good faith and fair dealing. This implied covenant is an independent duty and may be breached even when there is no breach of a contract's actual and/or express terms.

123.   Representative Plaintiff and Class Members have complied with and performed all conditions of their contracts with Defendants.

124.   Defendants breached the implied covenant of good faith and fair dealing by failing to maintain adequate computer systems and data security practices to safeguard PII, failing to timely and accurately disclose the Data Breach to Representative Plaintiff and Class Members and continued acceptance of PII and storage of other personal information after Defendants knew or should have known of the security vulnerabilities of the systems that were exploited in the Data Breach.

125.   Defendants acted in bad faith and/or with malicious motive in denying Representative Plaintiff and Class Members the full benefit of their bargains as originally intended by the parties, thereby causing them injury in an amount to be determined at trial.

## FIFTH CLAIM FOR RELIEF
### Kentucky Computer Security Breach Notification Act
### Ky. Rev. Stat. Ann. §§ 365.732, *et seq.*

126.   Each and every allegation of the preceding paragraphs is incorporated in this Claim with the same force and effect as though fully set forth herein.

127.   The Kentucky Plaintiff, individually (hereinafter "Plaintiff" for purposes of this Claim only) and on behalf of the Kentucky Subclass, brings this claim.

128.   Defendants are required to accurately notify Plaintiff and Kentucky Subclass Members if they become aware of a breach of their data security systems that was reasonably likely to have caused unauthorized persons to acquire Plaintiff's and Kentucky Subclass Members' Personal Information, in the most expedient time possible and without unreasonable delay under Ky. Rev. Stat. Ann. § 365.732(2).

129.   Defendants are a businesses that hold computerized data that includes Personal Information as defined by Ky. Rev. Stat. Ann. § 365.732(2).

130.   Plaintiff's and Kentucky Subclass Members' Personal Information includes Personal Information as covered under Ky. Rev. Stat. Ann. § 365.732(2).

131.   Because Defendants were aware of a breach of their security systems

that was reasonably likely to have caused unauthorized persons to acquire Plaintiff's and Kentucky Subclass Members' Personal Information, Defendants had an obligation to disclose the Data Breach in a timely and accurate fashion as mandated by Ky. Rev. Stat. Ann. § 365.732(2). By failing to disclose the Data Breach in a timely and accurate manner, Defendants violated Ky. Rev. Stat. Ann. § 365.732(2).

132.   As a direct and proximate result of Defendants' violations of Ky. Rev. Stat. Ann. § 365.732(2), Plaintiff and Kentucky Subclass Members suffered damages, as described above.

133.   Plaintiff and Kentucky Subclass Members seek relief under Ky. Rev. Stat. Ann. § 446.070, including actual damages.

### SIXTH CLAIM FOR RELIEF
### Kentucky Consumer Protection Act,
### Ky. Rev. Stat. §§ 367.110, *et seq.*

134.   Each and every allegation of the preceding paragraphs is incorporated in this Claim with the same force and effect as though fully set forth therein.

135.   The Kentucky Plaintiff, individually (hereinafter "Plaintiff" for purposes of this Claim only) and on behalf of the Kentucky Subclass, brings this claim.

136.   Defendants are "persons" as defined by Ky. Rev. Stat. § 367.110(1).

137.   Defendants advertised, offered or sold goods or services in Kentucky and engaged in trade or commerce directly or indirectly affecting the people of Kentucky, as defined by Ky. Rev. Stat. 367.110(2).

138.   Defendants engaged in unfair, false, misleading, deceptive and unconscionable acts or practices, in violation of Ky. Rev. Stat. § 367.170, including:

> a.   Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff and Kentucky Subclass Members' Personal Information, which was a direct and proximate cause of the Data Breach;
>
> b.   Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Data Breach;
>
> c.   Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff and Kentucky Subclass Members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, which was a direct and proximate cause of the Data Breach;
>
> d.   Misrepresenting that they would protect the privacy and confidentiality of Plaintiff and Kentucky Subclass Members' Personal Information, including by implementing and maintaining reasonable security measures;
>
> e.   Misrepresenting that they would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff and Kentucky Subclass Members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, *et seq.*;

     f.     Omitting, suppressing and concealing the material fact that they did not reasonably or adequately secure Plaintiff and Kentucky Subclass Members' Personal Information; and

     g.     Omitting, suppressing and concealing the material fact that they did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff and Kentucky Subclass Members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, *et seq.*

139.   Defendants' representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendants' data security and ability to protect the confidentiality of consumers' Personal Information.

140.   Defendants intended to mislead Plaintiff and Kentucky Subclass Members and induce them to rely on their misrepresentations and omissions.

141.   Plaintiff and Kentucky Subclass Members' purchased goods or services for personal, family or household purposes and suffered ascertainable losses of money or property as a result of Defendants' unlawful acts and practices.

142.   The above unlawful acts and practices by Defendants were immoral, unethical, oppressive and unscrupulous. These acts caused substantial injury to Plaintiff and Kentucky Subclass Members that they could not reasonably avoid—this substantial injury outweighed any benefits to consumers or to competition.

143.   Defendants acted intentionally, knowingly and maliciously to violate Kentucky's Consumer Protection Act and recklessly disregarded Plaintiff and Kentucky Subclass Members' rights. Defendants' numerous past data breaches put them on notice that their security and privacy protections were inadequate.

144.   As a direct and proximate result of Defendants' unlawful acts and practices, Plaintiff and Kentucky Subclass Members have suffered and will continue to suffer injury, ascertainable losses of money or property and monetary and nonmonetary damages, including from fraud and identity theft, time and expenses related to monitoring their financial accounts for fraudulent activity, an increased, imminent risk of fraud and identity theft and loss of value of their Personal Information.

145.   Plaintiff and Kentucky Subclass Members seek all monetary and nonmonetary relief allowed by law, including damages, punitive damages, restitution or other equitable relief, injunctive relief and reasonable attorneys' fees and costs.

## RELIEF SOUGHT

**WHEREFORE,** Representative Plaintiff, on Representative Plaintiff's own behalf and on behalf of each member of the proposed National Class and Kentucky

Subclass, respectfully requests that the Court enter judgment in favor of Representative Plaintiff and the Classes and for the following specific relief against Defendants as follows:

1. That the Court declare, adjudge and decree that this action is a proper class action and certify each of the proposed Classes and/or any other appropriate Subclasses under F.R.C.P. Rule 23 (b)(1), (b)(2), and/or (b)(3), including appointment of Representative Plaintiff's counsel as Class Counsel;

2. For an award of damages, including actual, nominal and consequential damages, as allowed by law in an amount to be determined;

3. That the Court enjoin Defendants, ordering them to cease and desist from unlawful activities;

4. For equitable relief enjoining Defendants from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Representative Plaintiff's and Class Members' PII, and from refusing to issue prompt, complete and accurate disclosures to Representative Plaintiff and Class Members;

5. For injunctive relief requested by Representative Plaintiff, including but not limited to injunctive and other equitable relief as is necessary to protect the interests of Representative Plaintiff and Class Members, including but not limited to an Order:

   a. prohibiting Defendants from engaging in the wrongful and unlawful acts described herein;

   b. requiring Defendants to protect, including through encryption, all data collected through the course of business in accordance with all applicable regulations, industry standards and federal, state or local laws;

c. requiring Defendants to delete and purge Representative Plaintiff's and Class Members' PII unless Defendants can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Representative Plaintiff and Class Members;

d. requiring Defendants to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of Representative Plaintiff's and Class Members' PII;

e. requiring Defendants to engage independent third-party security auditors and internal personnel to run automated security monitoring, simulated attacks, penetration tests and audits on Defendants' systems on a periodic basis;

f. prohibiting Defendants from maintaining Representative Plaintiff's and Class Members' PII on a cloud-based database;

g. requiring Defendants to segment data by creating firewalls and access controls so that if one area of Defendants' networks are compromised, hackers cannot gain access to other portions of Defendants' systems;

h. requiring Defendants to conduct regular database scanning and securing checks;

i. requiring Defendants to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling PII, as well as protecting the PII of Representative Plaintiff and Class Members;

j.   requiring Defendants to implement a system of tests to assess their respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Defendants' policies, programs and systems for protecting personal identifying information;

k.   requiring Defendants to implement, maintain, review and revise as necessary a threat management program to appropriately monitor Defendants' networks for internal and external threats, and assess whether monitoring tools are properly configured, tested and updated;

l.   requiring Defendants to meaningfully educate all Class Members about the threats that they face as a result of the loss of their confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect themselves.

6.   For prejudgment interest on all amounts awarded, at the prevailing legal rate;

7.   For an award of attorneys' fees, costs and litigation expenses, as allowed by law;

8.   For all other Orders, findings and determinations identified and sought in this Complaint.

# JURY DEMAND

Representative Plaintiff, individually and on behalf of the Plaintiff Class and

Kentucky Subclass, hereby demands a trial by jury for all issues triable by jury.


Dated: May 12, 2023

By:   _/s/ Charles H. Van Horn_
     Charles Van Horn, Esq.
     Charles Van Horn, Esq.
     **BERMAN FINK VAN HORN P.C.**
     3475 Piedmont Road, Suite 1640
     Atlanta, Georgia 30305
     Telephone: (404) 261-7711
     Email:    cvanhom@bfvlaw.com


By:   _/s/ Molly Munson Cherala_
     Molly Munson Cherala, Esq.*
     Laura Van Note* (CA S.B. #310160)
     Molly Munson* (CA S.B. #326195)
     **COLE & VAN NOTE**
     555 12th Street, Suite 1725
     Oakland, California 94607
     Telephone: (510) 891-9800
     Email:    lvn@colevannote.com
     Email:    mmc@colevannote.com
     *_Pro hac vice forthcoming_
     Attorneys for Representative Plaintiff and
     the Plaintiff Classes